FILED

2007 Aug-22  PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **SYDNEY DOMINIQUE TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. CV 05-B-2264-S** |
| | ) | |
| **GOT BEER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

The court has before it the motion, (doc. 15),[1] of defendant Got Beer, Inc., for summary judgment. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court concludes that defendant's motion for summary judgment is due to be granted.

## I. PROCEDURAL HISTORY

Plaintiff Sydney Taylor commenced this action on November 2, 2005 by filing a Complaint in this court alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Plaintiff contends that defendant's termination of plaintiff constitutes race discrimination. Defendant's Motion for Summary Judgment asserts that plaintiff has failed to establish a prima face case for her claim, and, in the

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

alternative, that plaintiff has failed to offer evidence sufficient for a reasonable jury to conclude that defendant's legitimate, nondiscriminatory reason for her termination was a pretext for race discrimination.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant submitted a brief, (doc. 16), and evidence,[2] (doc. 17), in support of its Motion for Summary Judgment. Plaintiff filed a brief, (doc. 19), and evidence,[3] (doc. 20), in opposition to defendant's Motion for Summary Judgment, and defendant filed a brief, (doc. 21), in reply to plaintiff's opposition.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,157 (1970). Once the moving party has met

---

[2]Defendant submitted the following evidence: deposition of Sydney Taylor; deposition of Mike Tucker; supplemental interrogatory responses; defendant's initial discovery responses; affidavit of Jarred Jackson; 06/17/05 disciplinary action; 06/11/05 disciplinary action; 10/01/05 disciplinary action; 04/05/05 disciplinary action; handbook page 9.

[3]Plaintiff submitted the following evidence: EDC Transaction Report 04/04/05-04/02/05; EDC Transaction Report 05/26/05; personnel file excerpts of Heather Lawhorn; personnel file excerpts of Kelly Shields; record of employee action on Shannon Reeves; record of employee action on Sydney Taylor.

its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference. *See Brown v. City of Clewiston*, 848 F. 2d 1534, 1540 n. 12 (11th Cir. 1988).

### III. **RELEVANT UNDISPUTED FACTS**[4]

Got Beer, Inc., owns and operates the sports bar On Tap Sports Café ("On Tap") in the Lakeview District of Birmingham, Alabama. (Tucker Dep. at 6.) Sydney Taylor applied for employment at On Tap on September 5, 2003, and was hired as a server. (Defendant's Interrogatory Response 5.) Taylor did not have a set schedule, but, according to her

---

[4]If the facts are in dispute, they are stated in a manner most favorable to the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

3

testimony, she primarily worked evenings because she went to school during the day. (Taylor Dep. at 20-22.)  She also worked a couple of lunch shifts.  (*Id.*)

As relevant to this action, Mike Tucker was the general manager for Got Beer, Inc., at On Tap, and was Taylor's supervisor.  (*Id*. at 10.)  Tucker testified that he usually worked during the day.  (*Id.* at 27.)  When he was not present, the bartender was responsible for the managerial duties.  (*Id.* at 27.)  These duties include "checking out" servers at the end of their shifts, when either Tucker or the responsible bartender took the servers' sales money and applicable paperwork.  (*Id.*)

Got Beer, Inc., uses a computer system to track transactions.  (*Id.* at 25.)   When a customer paid for food and/or drinks by credit card, Taylor would swipe the credit card on the computer for the charge.  (*Id.* at 26.)  She would receive two paper receipts, one for the restaurant and one for the customer.  (*Id.*)  She would deliver the customer's copy of the receipt to the customer.  (*Id.*)  After the customer left, Taylor would keep the restaurant's copy of the credit card slip.  (*Id.* at 27.)  If a customer left a tip on the credit card receipt, it was Taylor's practice when the restaurant was not busy to enter tips left by customers on their credit card receipts into the computer as she received them.  (*Id.*)   If Taylor did not immediately enter the tip upon receipt, she would enter the tip at the end of the night.  (*Id.*)

At the end of her shift, Taylor would go through the checkout process.  (*Id.*)  She would make sure that the money she turned in to the restaurant matched the total money owed as reported on her server report generated by the restaurant's computer system.  (*Id.*)

4

On April 1, 2005, Jarred Jackson and two friends patronized On Tap. (Jackson Aff. ¶¶ 2-4; Taylor Dep. at 49.)  Taylor recalls waiting on Jackson and his friends around midnight when the restaurant was one-third full. (Taylor Dep. at 49.) Jackson did not leave a tip for the service because he believed that Taylor's service was poor.  (Jackson Aff. ¶¶ 4-5 and Ex. 1.)  As usual, Taylor checked out at the end of the night.  Tucker did not perform Taylor's checkout that night; Taylor believes Amanda Liner, a bartender, may have done her checkout.  (Taylor Dep. at 62; Tucker Dep. at 41.)

A few days after Jackson patronized On Tap, he reviewed his bank statement and noticed that Taylor had charged his credit card for an amount in excess of his bill.  (Jackson Aff., ¶¶5-6 and Ex. 1.)  Jackson called On Tap and spoke with Tucker. (*Id*. ¶ 6.)  During the conversation, Jackson told Tucker that he was upset about the unauthorized charge and that he wanted to call the police.  (Tucker Dep. 46; Jackson Aff. ¶¶ 7-8.)   Jackson also told Tucker that, in the past, Taylor had charged one of Jackson's friends for a tip which she did not authorize.[5] (Tucker Dep. 46; Jackson Aff. ¶¶ 7-8 and Ex.1; Disciplinary Action 4/5/05).

After this conversation, Tucker pulled Taylor's credit card transaction report from the computer. (Tucker Dep. at 51.)  After reviewing the report, Tucker concluded that Taylor had not unintentionally switched credit cards and charged Jackson a tip left by another patron when entering the tip amounts as there was no zero amount for any other credit card. (*Id.*)

---

[5] Although plaintiff admits these facts, (see Opp. Br. at 3), plaintiff contends that these facts are inadmissible hearsay.  The court disagrees.  These facts are not offered for the truth of the matter asserted.  Instead, they are offered for what Jackson told Tucker.

There were two tip entries for the same amount, however.  (*Id.*)  Tucker testified that he did not consider the possibility that Taylor entered the tip amount twice.[6]  (*Id.* at 51-52, 59.)

Tucker contends that, as a result of this incident, he made the decision to terminate Taylor.[7]  (*Id.* at 51-85.)  On April 5, 2005, Taylor was terminated  for theft.  (Disciplinary Action 4/5/05; Tucker Dep. at 75-76.)  Although Taylor admits that she charged Jackson for a tip that he did not leave, she denies intentionally overcharging Jackson.  (Taylor Dep. at 59-61.)  Instead, Taylor contends that it was a mistake and that she must have entered a tip of $4.38 twice on similar bills.  (*Id.*)  Taylor stated that Tucker did not give her a chance to explain what happened that night, but instead fired her without giving her an opportunity to prove that it was a simple mistake.  (*Id.* at 30.)

## IV.  APPLICABLE SUBSTANTIVE LAW

In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  Here, it is undisputed that plaintiff has presented only circumstantial evidence of race discrimination.

---

[6] Plaintiff points out that, although the tip amounts are separated on the credit card report, because one was a Visa card and the other was an American Express card, it is impossible to say whether the tips were entered one after another.  (Tucker Dep. at 59, 120.)

[7] The employee handbook provides that an employee is subject to immediate termination for theft from the restaurant, customers, or fellow employees. (Handbook Page 9.)

"In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See id.* at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Bd. of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[8] *See McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(discipline); *see also Nix*, 738 F.2d at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981)(wages).

---

[8] *See also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[9]  *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Combs*, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  *Burdine*, 450 U.S. at 254-55; *see Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[10]  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  *See Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

---

[9] *See Chapman v. AI Transport*, 229 F.3d 1012, 1032 (11th Cir. 2000)(A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[10] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  *Chapman*, 229 F.3d at 1030.

8

remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgment either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[11] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

---

[11] The court in *Chapman* modified the statement in *Combs* contrary to this holding in *Reeves* after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. *See Chapman*, 229 F.3d at 1025, n.11.

# V.  DISCUSSION

Plaintiff contends that she was terminated because of her race, Asian-American. Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima facie case, and, in the alternative, that she has failed to offer evidence sufficient for a reasonable jury to conclude that defendant's legitimate, nondiscriminatory reason for her termination was a pretext for race discrimination.  Taylor brings her claim under both Title VII and section 1981.  Because these claims "have the same requirements of proof and use the same analytical framework," the court will "explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard*, 161 F.3d at 1330.

### A.  Prima Facie Case

To establish a prima facie case, Taylor must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than similarly-situated employees outside her protected class. *Maynard v. Bd. of Regents of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Holifield*, 115 F.3d at 1562.  It is undisputed that Taylor is a member of a protected class, Asian-American, that she was qualified for her job, that she was subjected to an adverse

employment action, termination, and that she was replaced by a person outside of her protected class.[12]

## B.  Legitimate Nondiscriminatory Reason

Because Taylor established a prima facie case, the burden shifts to Got Beer, Inc. to articulate a legitimate, nondiscriminatory reason for Taylor's termination.  It is undisputed that Taylor charged Jackson's credit card for more money than authorized, and that she was terminated for this incident.  (Taylor Dep. at 64.)   As such, Got Beer, Inc. met its burden to articulate a non-discriminatory reason for plaintiff's termination, and the burden of production now shifts to Taylor, who must offer evidence sufficient for a reasonable jury to conclude that the articulated reason "is unworthy of credence," or that Got Beer, Inc. was more likely motivated by a discriminatory reason.  *Holifield*, 115 F.3d at 1565.

## C.  Pretext

Taylor makes two arguments to satisfy her burden.   First, she argues that "[d]efendant's articulated reason for [her] termination has been a 'moving target.'" (Pl. Opp. Br. at 17-18.)  Second, she argues that she was terminated for conduct that her white co-workers engaged in but were either not disciplined or received only a written discipline.  (*Id.* at 18-27.)  Upon examination of the evidence, both arguments fail to establish pretext.

---

[12]Taylor was clearly replaced by someone outside her protected class because Tucker admits that he has not hired any Asian-American servers since he terminated Taylor. (Tucker Dep. at 56.)

As to the first argument, the legitimate nondiscriminatory reason articulated by defendant has not changed.  That the defendant may have used different phrases or characterizations of the incident does not make the reason a "moving target."  Taylor was terminated for charging a tip to a customer who did not authorize it.  Whether the defendant characterizes that as a "theft" or a customer's complaint, it all boils down to the same reason: Taylor was fired for charging Jackson's credit card for more money than he authorized.  That articulated reason has been consistent from the beginning.

Plaintiff's second argument is that white servers made similar mistakes, but were not terminated.  However, Tucker did not think that the incident with Taylor was a mistake.  Moreover, she has not presented any evidence that her race had anything to do with Tucker's evaluation of the situation.  That Tucker might have been incorrect, or that Tucker may not be a good manager does not equate with a conclusion that he discriminated against Taylor because of her race.  *See, e.g., Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Elroy v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that the inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination).

Taylor names three potential comparators: Heather Lawhon, Kelly Shields, and Stephanie Brown.  Defendant contends that none are proper comparators because they are not "similarly situated in all relevant respects."  The court will discuss each comparator in turn.

Heather Lawhon is a white female, who was also a server at On Tap when Tucker was the general manager.  (Excerpts from Lawhon's personnel file, Pl. Ex. 3.)  On March 5, 2005, Lawhon added tips for $8.00 each to two bills, although neither customer authorized a tip. (*Id.* at 7-9.)  On March 27, 2005, Lawhon increased the tip left by a customer.  (*Id.* at 10-11.) In addition, on April 1, 2005, Lawhon added a $1.50 tip when the customer did not leave a tip, and on April 12, 2005, she increased her tip amount by $1.00.  (*Id.* at 2-6.)  There is no evidence in the record that Tucker, the decision-maker in this case, was aware of these incidents or that anyone called and complained about them.

Kelly Shields, a white female, was also a server at On Tap when Tucker was the general manager.  (Excerpts from Shields personnel file, Pl. Ex. 4.)  On March 22, 2005, Shields added a $4.00 tip to a bill when the customer did not leave a tip.  (*Id.* at 2-3.)  In addition, the next day Shields entered a tip of $3.00 when the customer did not sign the receipt or indicate whether a tip was authorized.  (*Id.* at 4-5.)  There is no evidence in the record that Tucker was aware of these incidents or that anyone called and complained about them.

Stephanie Brown, a white female, also worked as a server at On Tap.  (Taylor Dep. at 40-41; Tucker Dep. at 63.)  One night, Brown waited on two customers who both had bills of $9.00.  (Tucker Dep. at 66.)  Both patrons paid for their bill using Visa credit cards.  (*Id.*)  One patron left a tip on the credit card receipt and one did not.  (Id.)  Brown, however, charged the tip to the customer who did not leave the tip, and charged no tip to the customer who did leave a tip.  (*Id.*)  A few days later, the customer who was overcharged called and reported the incident to Tucker.  (*Id.*)  Tucker pulled the credit card transaction record from the computer and immediately realized what had happened: that Brown had "switched the slips around and put the tip on the wrong slip."  (*Id.*)  Brown was written up regarding the incident.  (*Id.* at 71.)

None of these women are proper comparators.  The differences between Taylor and these three women are small, but important in the requirement that the plaintiff be "nearly identical" to the comparators.  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  There is no evidence in the record that Tucker knew about the incidents regarding Lawhon and Shields.  *See Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 658-59 (11th Cir. 1998) (an employee who may have broken a rule but was not caught was not similarly situated to one who had been caught); *Amos v. Tyson Foods, Inc.*, 153 Fed. Appx. 637, 647 (11th Cir. 2005) ("[e]mployees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the other's conduct"); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000) (an employee who admitted to improper conduct was not

14

similarly situated to one who did not).  Although Brown is a closer call, she is still not a proper comparator.  When Tucker looked at the credit card transaction report from the incident regarding Brown, it was clear to him that Brown merely switched the tips on the identical, $9.00 receipts.  However, when Tucker looked at the report regarding the incident with Taylor, it was not so clear.  There were no identical bills, and, although there were two identical tip amounts, Tucker testified that it never occurred to him that Taylor mistakenly entered the amount twice.  As such, Tucker's investigation of the customer complaint regarding Brown revealed a mistake, but Tucker could not so conclude with his investigation of the complaint regarding Taylor.  (Id. at 46, 62-63, 66, 76.)  These different conclusions, and the reasons for them, make the situations not "nearly identical" as required by *Maniccia*.

## VI. <u>CONCLUSION</u>

In summary, the court concludes that plaintiff established a prima facie case of discrimination.  However, plaintiff failed to offer evidence sufficient for a reasonable jury to conclude that Got Beer, Inc.,'s articulated, non-discriminatory reason for terminating plaintiff "is unworthy of credence," or that Got Beer, Inc., was more likely motivated by a discriminatory reason.  Therefore, the court finds that no material issues of fact remain and that defendant Got Beer, Inc., is entitled to judgment as a matter of law on plaintiff's complaint.  An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

15

**DONE** this 22nd day of August, 2007.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE